**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SKY TOWER PUERTO RICO INC. | Civil Case No. |
| Plaintiff | |
| vs. | CIVIL ACTION |
| DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO OFICINA DE GERENCIA DE PERMISOS; COMMONWEALTH OF PUERTO RICO, MUNICIPALITY OF MOCA | DECLARATORY JUDGEMENT AND INJUCTION UNDER THE FEDERAL TELECOMMUNICATIONS ACT (47 USC 332(C)(7)) |
| Defendant | |

**<u>COMPLAINT FOR INJUCTIVE AND DECLARATORY RELIEF</u>**

TO THE HONORABLE COURT:

Comes now Plaintiff, **SKY TOWER PUERTO RICO INC., ("SKY TOWER"),** through its undersigned legal counsel and respectfully **STATES, ALLEGES, and PRAYS**:

**I.    THE PARTIES**

1. The Plaintiff, Sky Tower Puerto Rico, Inc., (herein: "Sky Tower"), is a corporation organized and existing under the laws of the State of Wyoming and authorized to do business in Puerto Rico. Sky Tower is an infrastructure provider for "communications common carrier" and a telecommunications carrier infrastructure provider for "commercial mobile services," "commercial mobile radio services," "personal communications services," and "personal wireless services" as those terms are defined and commonly used in the Communications Act of 1934, the Federal Telecommunications Act, and the Federal Communications Commission ("FCC") rules and regulations, and orders promulgated pursuant thereto. Sky Tower operates a nationwide wireless network across Puerto Rico.

2.    Co-Defendant Departamento de Desarrollo Económico y Comercio Oficina de Gerencia de Permisos, ("Department Of Economic Development And Trade Office Of Permit Management; DDEC") is a Commonwealth of Puerto Rico Administrative Agency created through Puerto Rico Law No. 76 of June 24, 1975, 23 L.P.R.A. §71 et seq. One of DDEC's subdivisions is the "Oficina de Gerencia de Permisos" (OGPE).  Its main objectives include the application of the Planning Board's laws and regulations, as well as of its own regulations. The DDEC and its subdivision OGPE are the local agencies responsible for issuing permits authorizing the construction of telecommunications facilities like the one implicated in this complaint.   These agencies were not delegated with the powers to sue or be sued.

3.    Since the DDEC and the OGPE do not have the capacity to sue and be sued, plaintiff accumulates as codefendant The Commonwealth of Puerto Rico on their behalf.   The Commonwealth of Puerto Rico is the legal entity charged with representing the Governmental departments, agencies, with capacity to sue or be sued.  As such, is responsible for all actions committed or omitted by DDEC and OGPE.

4.    Co-Defendant, Municipality of Moca ("MC"), is an autonomous municipality of the Commonwealth of Puerto Rico that has independent authority and right to sue and be sued.  Its address is Casa Alcaldía, Calazán Lasalle Street, Moca PR 00676.  At all relevant times, the Roof Top facility subject of this litigation is located in the Municipality of Moca.

## II. JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action conferred under 18 U. S. C. § 1961, *et seq*. because this case sets forth violations of a federal statute, Telecommunications Act of 1996. This Court has jurisdiction over this action pursuant to 28 U.S.C. sec. 1331, and the Declaratory Judgment Act, 28 U.S.C. sec. 2201 et seq., inasmuch as the same presents federal questions

arising under the Federal Telecommunications Act (47 U.S.C. sec. 332(c)(7)) , which provides that "anyone adversely affected by any final action or failure to act by local government that is inconsistent with the limitations [of the Telecommunications Act] may seek review in any court of competent jurisdiction and the court shall hear and decide such action on an expedited basis."[1] The Court has supplemental jurisdiction over any and all Puerto Rico law claims arising out of this case pursuant to 28 U.S.C. sec. 1367.

6.   The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all remaining parties and claims in this case, as the claims against those parties are so related to claims in the action over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this district, and engaging in numerous activities that had an effect within this judicial district.

### III. NATURE OF THE ACTION

8.   In 1996, Congress passed the Telecommunications Act (1996 Act), which eliminated the exclusive franchises possessed by the incumbent LECs (ILECs) and **preempted** state statutes, regulations and other legal requirements that "prohibit or have the effect of prohibiting the ability of any entity to provide interstate or intrastate telecommunications services." *Id.* at 4-5 (quoting 47 U.S.C. § 253(a)). Congress also required all telecommunications carriers to interconnect their networks to ensure that all

---

[1] Sky Tower has not requested a preliminary injunction because the Federal Telecommunications Act expressly mandates that this complaint be processed on an expedited basis.

consumers can place and receive calls from consumers that are served by different carriers. *Id.* at 5.BTC, Inc. v. AT&T Corp., No. C18-3075-LTS, 2019 U.S. Dist. LEXIS 150540, at *4 (N.D. Iowa Sep. 3, 2019). Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (to be codified at 47 U.S.C. § 609 et. seq.) (stating that the Act seeks to in part "encourage the **rapid deployment** of new telecommunications technologies").

9.   The legislative history of the Act evidences this competitive objective: "[t]he managers on the part of the House and Senate [intend] ... to provide for a pro-competitive, **de-regulatory**, national policy framework **designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies** and services to all Americans by opening all telecommunications markets to competition ... **."** In fact, the House Report articulates that the "enormous benefits to American businesses and consumers from lifting the shackles of monopoly regulation will almost certainly earn the [Telecommunications Act] the distinction of being the most deregulatory bill in history". (H.R. Conf. Rep. No. 104-458, at 113 (1996)(H.R. Rep. No. 104-204, at 47-48 (1996).

10. Across the U.S., this wireless telecommunications revolution has encountered significant resistance at the grassroots level. Although consumers enjoy the flexible advantages of mobile communications, they also express a "not in my backyard" attitude towards the infras-tuctural requirements associated with cellular telephone service.   See Michigan Telecommunications and Technology Law Review, 1997, Telecommunications Act of 1996: *704 of the Act and Protections Afforded the Telecommunications Provider in the Facilities Sitting Context, The.*  See Also Spring Spectrum v. City of Medina, 924 F. Supp. 1036 (W.D. Wash. 1996) (resulting from City of Medina's enactment of a six-month moratorium on issuing permits for wireless communications facilities such as cellular towers).

11. When attempting to locate a wireless telephone communications facility, such as a Cellular transmission tower, a service provider typically has to apply for and receive either a permit to construct the tower or a rezoning of the land at issue to allow for such construction. Section 704 of the Act, codified at 47 U.S.C. § 332(c), provides certain statutory protections to an applicant who applies for such a permit or rezoning, provided the application involves the siting of a personal wireless service facility such as a cellular tower. These protections, of course, are in addition to the standard protections afforded by equal protection, due process, and applicable state law doctrines such as mandamus.  See *BellSouth Mobility*, 944 F. Supp. At 929 (granting relief under both the Act and state mandamus law).

12. The Act provides five separate and substantial protections for the Telecommunications facility applicant in the amended 47 U.S.C. § 332.  To wit:

(A) the regulation of placement, construction, and modification of personal wireless services facilities by any state or local government **shall not unreasonably discriminate** among providers of functionally equivalent services;

(B) the regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government **shall not prohibit or have the effect of prohibiting** the provision of personal wireless services;

(C) once an applicant files a request for authorization to place, construct, or modify a personal wireless service facility, the **governmental entity shall act on the application "within a reasonable period of time after the request is duly filed"**;

(D) **no state or local governmental entity may regulate the placement, construction, or modification of personal wireless service facilities on the basis of environmental effects** of radio frequency emissions to the extent that such emissions comply with FCC regulations; and

(E) any decision by a state or local governmental entity to deny an application to place, construct, or modify a personal wireless service facility shall be in writing and supported by **substantial evidence contained in a written record**.

13. In *Spring Spectrum,L.P.v.City of Medina,* plaintiff/appellant cellular provider filed suit under the Act claiming that a six-month moratorium on the issuance of permits for wireless communications facilities enacted by the defendant/appellee city violated subsection (B)(i)(lI) of the Act because the ordinance's effect was prohibitory.  The Medina Court made it clear that temporarily suspending the granting of permits for telecommunications facilities does not violate the Act if it is of reasonable duration (**six months**)[2], the Court suggested that if all applications would have been *denied* during this six-month period, **the moratorium would have violated the Act**. Of course, **any extension of the moratorium** might also be violative of the Act, **constituting an unreasonable delay** in processing the application under subsection (B)(ii).  In fact, Subsection (B)(ii) **prevents a governmental unit from sitting on, or refusing to rule on an application to place or construct wireless service facilities**. See Michigan Telecomunications and Technology Law Review, 1997, Telecommunications Act of 1996: *704 of the Act and Protections Afforded the Telecommunications Provider in the Facilities Sitting Context, The*.

14. Furthermore, the Act states that a permit should not be denied based upon unscientific or irrational fears that emissions from telecommunications sites may cause undesirable health effects. In a surprising number of public hearings on the issue of cellular siting, individuals appear and complain of allegedly harmful health effects, although the authors know of no studies sub- stantiating such claims. *See, e.g., BellSouth Mobility,* 944 F. Supp. at 926 (describing comments made at permit hearing by a homeowner, who spoke in opposition to the construction of the proposed cellular monopole and claimed that its emissions might cause

---

[2] Six months is the same time frame established under LPAU.

adverse health effects). Also, the permit decision requires a record to deny an application. A court should not a merely rubber stamp a governmental entity's denial of an application. Id.

15.  The Act provides telecommunications companies, like Sky Tower, to commence an actions like the captioned one in any court of competent jurisdiction.

Subsection (B)(v) states, in pertinent part, as follows:

Any person adversely affected by any final action or failure to act by state or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within thirty days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. 47 USC Sec. 332 (c)(7)(B)(v).

16. A denial or lack of decision to issue of a special use permit and variance to build a wireless tower, it constitutes "final action" for purposes of the Telecommunications Act of 1996 Global Tower Assets, LLC v. Town of Rome, 810 F.3d 77.

### IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17.      The main business of Sky Tower is to provide and install communications infrastructure through Puerto Rico for communications common carriers, commercial mobile services, commercial mobile radio services, personal communications services and personal wireless services among others.   The geographical necessity of the infrastructure to be provided is not determined by Sky Tower.  The geographical reference for the installation of antennas or any other infrastructure is determined by communication commercial entities like Liberty, Claro and T-Mobile.  This depends on the necessity of the community.  The site locations are submitted by the communication commercial entities to the Telecommunications Regulatory Board (Junta Reglamentadora de Telecomunicaciones), who, after careful consideration, recommended the approval of the site location, subject to certain requirements.  (Exhibit 1, 2 and 3). After such approval, Sky Tower begins all necessary procedures in order to provide the infrastructure.

18.    In the captioned case, Sky Tower received a request from T-Mobile in order to install a Roof Top facility in the Municipality of Moca.  This, due to the lack of service coverage on the area.  (Exhibit 4) For such purpose, Sky Tower applied for a permit with DDEC and OGPE to install a telecommunications facility on the roof of a three-story building located on 170 Ramos Antonini Street (Street 110 R), Moca, Puerto Rico, and Calle Isabela Bo Pueblo, Moca, Puerto Rico with cadastral number: 070-022-002-28.  (Exhibits 1, 2 and 3) If there are too few cell sites or if the cell sites are located too far apart, wireless telephone users serviced by Sky Tower's infrastructure may experience unreliable service, including disconnection of calls, static and difficulty placing calls, including calls to emergency services. At present, there is a significant service gap throughout the Town of Moca, meaning a subscriber will experience unreliable service or no service at all in the gap area. Based on technical analyses by T-Mobile, it was determined that the proposed infrastructure will eliminate much of the service gap in the Town of Moca.

19.    In order to meet its obligations under its FCC and FAA licenses and provide reliable service to its customers, Sky Tower must create an infrastructure for cellular communications of individual but interconnected "cell sites," which are antenna facilities consisting of radio antennas installed on an existing building or other structure, such as a tower or monopole, and attached equipment that send and receive radio signals to and from customers' portable wireless communications handsets and mobile telephones.  (Exhibit 5, Technical Specifications)

20.    Sky Tower submitted the Application for the Facility by mid 2021, after considering numerous other alternatives and the coverage needs of the Town of Moca. (Exhibits 1, 2 and 3).

8

21.     Thinking ahead of time, on 2019 Sky Tower negotiated and ultimately entered into a lease agreement with the owner of the building where the infrastructure was going to be proposed for the installation. (Exhibit 6) As part of its Application, Sky Tower filed an original petition under the number 2021-401812-PCOC-023359 and then filed in 2023 by Eng. Carlos Quiñones a new construction permit application under the number 2023-508025-038756 which explained the reason for the new application. (Exhibit 7, Memo submitted to OGP, Institute of Culture and Telecommunications Bureau of P. R.). All writings and information were submitted to the previous case 2021-401812-PCOC-023359, which are in that file. Likewise, the Institute of Culture Puerto Rican presented no objection to the project. (Exhibit 8).

22.     The application for the roof-top platform complied with all applicable regulations and no variance were requested by the DDEC nor OGPE.  Also, Sky Tower had complied with all the requirements for the granting of such permit pursuant to the Board's Regulation for Telecommunications Projects ("Regulation 26"). This included the obtainment of an endorsement from the Puerto Rico Telecommunications Regulatory Board (the "TRB"). Also, the following documents were submitted and are part of the administrative record in OGPE. (Exhibits 9, Project Manager Certification, Exhibit 10, Contract of Design & Acceptance, Exhibit 11, Construction Estimates, Exhibit 12, Flooding Certifications, Exhibit 13, Ground Certification, Exhibit 14, Construction Code Certification, Exhibit 15, Graphic Archives Certifications, Exhibit 16, Blue Prints, Exhibit 17, State Department Certifications, Exhibit 18, Environmental Hazar Certification, Exhibit 19, Recycling Certification, Exhibit 20, No Hazard to Air Navigation Certification, Exhibit 21, Insurance Certification, Exhibit 22, Municipal Tax Payment, Exhibit 23 Photo of the Construction Sign)

23.     Notwithstanding Sky Tower's compliance with all applicable requirements, a

group of citizens and residents of the neighborhood made several approaches to the

Municipality of Moca related to concerns about adverse health effects and security for the

alleged construction and installation of the mentioned Telecommunications facilities. (Exhibit

24) Also, through complaint 2023-SRQ-012871, these residents and the municipality requested

from the Planning Board the levy of a fine and the intervention of the project. Said agency

issued a fine and order of cessation all actions. (Exhibit 25)

24. The Municipality of Moca expressed that they do not endorse the proposed

project because itself does not comply with their public policy outlined in the Plan of Territorial

Planning valid from December 2020 nor does it comply with a series of provisions of the Joint

Regulation (2020). The Municipality of Moca stated that it presented a land use plan with the

Board and, if such plan is approved, the Municipality would have the authority to issue or deny

permits and would ban telecommunication facilities from urban areas. (Exhibit 25) Such action

violates the Act. Moca stated the following:

a. The project does not meet the required distance of fifty (50) meters as a buffer zone, measured from the tower[3] to the abutment of a school, according to Section 9.11.2.1 subsection (3). Saulo Furniture is adjacent to the Adolfo Public School Babylon Quiñones, that is, they are immediate neighbors, so Therefore, it does not comply.

b. Does not comply with the minimum required distance of fifteen (15) meters from the tower[4] to the nearest structure, see Section 9.11.2.1 subsection (4). Said building with three (3) floors of the Saulo Furniture is adjacent to the Antonio Commercial Building Loperena Nieves, being glued to each other, so the distance is zero (0) meters.

c. The project is one prohibited by Section 9.11.2.3 subsection (c), which states that the installation and location will not be permitted of towers and telecommunications installations in structures appointed by the J.P. as a historical

---

[3] OGP and DDEC insist on treating the facility as a tower when it is a roof-top platform.

[4] OGP and DDEC insist on treating the facility as a tower when it is a roof-top platform.

site or area, in the centers foundations of the towns, meaning the recreation squares and surrounding blocks. Since the project is adjacent to the School Adolfo Babilonia, which is a declared historical site, locates in front of the Nuestra Señora de la Monserrate Catholic Church, the which is also declared a historical site and is located on Ramos Street Antonini, which is one of the surrounding streets of the Plaza Public and said structure of the Furniture Store is located less than 50 meters from the corner of the square. Due to the above, it should not be allow the location of said antenna.[5]

d. The proposing party did not comply with one of the requirements basic requirements required by Section 9.11.2.4 regarding notice and notification to adjoining owners. The proponent is required of the project has to divide the property owners that reside within a radial distance of one hundred (100) meters taking as center the proposed location within a term of ten (10) days from the date of presentation. According to us verified, several of the property owners were not notified that reside within the radius of one hundred (100) meters or to the Municipality who He is the owner of the Public Plaza. and. Section 9.11.2.4 subsection (f) requires that the OGP must notify the Municipality of Moca a copy of its final determination regarding the approval or denial of the permit application in the same day on which such final determination is notified to the proponent. Said notification to the Municipality of the Final approval issued on June 17, 2022.[6]

25.    In case 2023-SIN-009326, the OGPE and DDEC issued a resolution on February 2023 recognizing the Municipality of Moca as part intervener.  (Exhibits 27, 28, 29).  Moca failed to comply with its legal duty to notify Sky Tower.  Also, after such intervention, Moca has taken no further action.

26.    As stated before, Sky Tower filed a Memorandum on September 4th, 2023. As translated to English the Memorandum states:

---

[5] The Institute of Culture and SHIPO, which are the agencies that control the buildings protected for being historical, approved it. (See Exhibit)

[6] All neighbors were notified as the law requires.

On June 17, 2022, the OGPE issued the Notification of Requirements for Approval of Construction Permit #2021-401812-PCOC-023359 for the case that we are now requesting again. The reason for this new request is that the designer of the previous case, Eng. Victor Ocasio, lic. 11961, he resigned from the case prior to carrying out the Release of the Permit. It is for this reason that the construction permit was never issued even though all the requirements of the Notification were submitted to the OGPe.

On August 18, 2023, in a meeting with Engineer David Jordan, Manager of OGPe Arecibo, he recommended that we contact Lic. Edmee Zeidán, who would inform him of what we had been discussed regarding the case and that the best solution to be able to obtain the permit was to file a new case with all the certifications in the name of the undersigned designer. The OGP would then proceed to transfer the information, documents and payments made to the new case, leaving it at the same stage as the previous one, namely the Notification.

I was able to communicate with Ms. Ita Ríos last week, who confirmed that the OGP agreed with what was reported by Jordan, director of the Arecibo region, and that they were waiting for the filing of the new case to process it as indicated, so we are proceeding to file today.

All certifications, documents and plans signed and sealed by the undersigned designer are submitted with the filing of the new case. In addition, a photograph of the project identification label is submitted with updated case number and designer information.

We understand that the project fully complies with the Joint Regulation of Permits for Construction Works and Land Use in force and with Law No. 89 of June 6, 2000, so we ask that you approve our request. Signed. See Exhibit 7

27.    After several continuances and having duly notified the neighbors as required by Regulation 26 and Law 89    of June 6, 2000, 27 L.P.R.A. sec. 321 et seq. ("Law 89"), the Act requires an approval letter to be issued, because that is the stage that the project was at before complying with OGP's and DDEC's recommendation of the change designer (Proyectista). (See Exhibits 1, 2 and 3

28.    Based on the memorandum submitted on September 4th, 2023 and on the representations made by OGPE and DDEC, the permit needed to be issued since the letter stating that only a couple of requirements that were proforma stood between the designer and the permit. The letter states in English:

This notice informs you that in order for your application to be granted final approval, you will need to comply with the conditions indicated below:

1. Submit the Certification for the Construction or Urbanization Permit Processing (Eventual Policy), as formalized in the Corresponding office of the State Insurance Fund Corporation.

2. Submit evidence that the municipal taxes corresponding to this work have been satisfied, in accordance with Law No. 88 of June 24, 1971, copy of the exemption decree as evidence that Article 2, Section C of the Law applies of Tax Incentives of 1987, Law Number 8 of January 24, 1987, as amended, or certification to that effect from the Office of Industrial Tax Exemption of the Department of State.

3. Submit a photo of the sign that will identify the construction (properly installed) in accordance with the provisions of the Regulations Current set. It will be the responsibility of the developer to install a sign with a minimum size of 2' x 4' at the principal entrance of the property that includes the following: application number, type of application submitted, name of the owner and proponent of the work, postal and electronic address of the OGPE or Autonomous Municipality for comments on the application. Signed. OGP's new Intervenor Request on September 21st, 2023

Exhibit 1, 2 and 3.

29.      Sky Tower P.R. Inc. through Eng. Carlos Quiñones complied and filed a new construction permit application under the number 2023-508025-038756. (Exhibit 7) All their evidence and forms and information were submitted from the previous case 2021-401812-PCOC-023359, which were in that file. Likewise, writings were sent to the Institute of Culture Puerto Rican and to the Telecommunications Bureau of P. R.

30.      Contrary to what the Act requires, instead of granting the approval letter, OGPE and DDEC issued a new Intervenor Request on September 21st, 2023 stating:

"A group of citizens and residents of the Pueblo neighborhood have made several approaches to the Autonomous Municipality of Moca in related to concerns about adverse health effects and security for the alleged construction and installation of some Telecommunications facilities on the roof of a building existing three (3) floors where Mueblería Saulo is located in the 170 Ramos Antonini Street (110 R road).

In the submitted writings our City has expressed with clarify the deficiencies found, such as:

a. Failure to notify neighbors (Section 9.11.2.4 of the Joint Regulations).

b. The OGP did not notify the Municipality about the Notification of Requirements issued on June 17, 2022, in violation of the provisions of Section 9.11.2.4 subsection (b)

c. The proposing party did not request or obtain the recommendation municipal required in Section 3.2.1.2, subsection (p) of the Joint Regulation.

d. The proposing party failed to pay the taxes municipal requirements required by Law 107-2020 and the Ordinance current.

e. The project does not meet the minimum required distance of 50 meters from the tower to the border of a school according to section 9.11.1.2 subsection (3). The project borders with the Adolfo Babilonia Quiñones and Luis A. Colón School.

f. The project does not meet the minimum required distance of fifteen (15) meters from the tower to the nearest structure close. Saulo Furniture is zero meters from the building of Mr. Antonio Loperena in accordance with Section 9.11.2.1 subsection (4).

g. The project is prohibited by Section 9.11.2.3 subsection (c) given that it is located in front (corner) of the Public Plaza.

On the other hand, Resolution Number 17 Series 2022 was submitted. 2023 approved on February 13, 2023 in which it expresses its opposition and the foundations for it are presented.

Through complaint 2023-SRQ-012871, a group of residents and the municipality requested from the Planning Board the intervention to the project. Said agency issued a fine and order of paralyzation.

The Municipality of Moca does not endorse the proposed project because itself does not comply with our public policy outlined in the Plan of Territorial Planning valid from December 2020 nor does it comply with a series of provisions of the Joint Regulation (2020).

In case 2023-SIN-009326, the OGPe issued a resolution on February 2023 recognizing the Municipality of Moca as part intervener and at present the proposing party has failed to comply with its legal duty to notify the legal representation of the municipality after having become aware of the new request and that in a statement dated September 13, 2023, we reiterate the points made previously and which are the following:

a. The project does not meet the required distance of fifty (50) meters as a buffer zone, measured from the tower to the abutment of a school, according to Section 9.11.2.1 subsection (3). Saulo Furniture is adjacent to the Adolfo Public School Babylon Quiñones, that is, they are immediate neighbors, so Therefore, it does not comply.

 b. Does not comply with the minimum required distance of fifteen (15) meters from the tower to the nearest structure, see Section 9.11.2.1 subsection (4). Said building with three (3) floors of the Saulo Furniture is adjacent to the Antonio Commercial Building Loperena Nieves, being glued to each other, so the distance is zero (0) meters. c. The project is one prohibited by Section 9.11.2.3 subsection (c), which states that the installation and location will not be permitted of towers and telecommunications installations in structures appointed by the J.P. as a historical site or area, in the center's foundations of the towns, meaning the recreation squares and surrounding blocks. Since the project is adjacent to the School Adolfo Babilonia, which is a declared historical site, locates in front of the Nuestra Señora de la Monserrate Catholic Church, the which is also declared a historical site and is located on Ramos Street Antonini, which is one of the

surrounding streets of the Plaza Public and said structure of the Furniture Store is located less than 50 meters from the corner of the square. Due to the above, it should not be allow the location of said antenna.

d. The proposing party did not comply with one of the requirements basic requirements required by Section 9.11.2.4 regarding notice and notification to adjoining owners. The proponent is required of the project has to divide the property owners that reside within a radial distance of one hundred (100) meters taking as center the proposed location within a term of ten (10) days from the date of presentation. According to us verified, several of the property owners were not notified that reside within the radius of one hundred (100) meters or to the Municipality who is the owner of the Public Plaza.

e. Section 9.11.2.4 subsection (f) requires that the OGP must notify the Municipality of Moca a copy of its final determination regarding the approval or denial of the permit application in the same day on which such final determination is notified to the proponent. Said notification to the Municipality of the Final approval issued on June 17, 2022."

Exhibit 29

31.        Ing. Nelson Morales, CEO of Sky Tower and Digital Assets, notified a letter to DDCE and OGPE urging the agency to continue the process but, no further action has been taken by OGP and DDCE.  Exhibit 30.

## V. CAUSES OF ACTION

### COUNT 1

### (Substantial Evidence)

32. The allegations of paragraphs 1 through 31 are incorporated by reference as if re-alleged herein.

33.        The Federal Telecommunications Act went into effect on February 8, 1996.

34.        The stated purpose of the Federal Telecommunications Act is to "promote competition and reduce regulation in order to secure lower prices and higher quality purposes for American Telecommunication consumers and encourage the rapid deployment of new telecommunications technologies." (Preamble to the Federal Telecommunications Act).

15

The Federal Communications Act, as amended by the Federal Telecommunications Act, provides, in pertinent part: Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, **commence an action in any court of competent jurisdiction**. 47 U.S.C. § 332(c)(7)(B)(v).

35.     The Federal Communications Act has been interpreted to vest courts of competent jurisdiction with authority to grant injunctive relief if such relief would be warranted under the circumstances.

36.     The Federal Communications Act further provides, in pertinent part:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332 (c) (7) (B) (iii).

37.     The Commonwealth of Puerto Rico and its agencies OGP's and DDEC's apathy and inaction resulted on a denial of the Application for all intent and purposes that failed to comply with the Federal Communications Act.  **It has been more than three years.**

38.     The inaction and in effect denial of the Application is not supported by any evidence from the administrative record.

39.     By not acting on the permit application without substantial evidence in the written record supporting the non-action, the Commonwealth of Puerto Rico and its agencies OGPE's and DDEC's in effect has turned for all intents and purposes as a DENIAL in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

40.     Furthermore, the only rational grounds for the non-action and in effect denial of the permit application are the concerns raised by Moca citing the site neighbors regarding the alleged prejudicial effects of radio frequency emissions as detailed in the "Intervention Letter" of September 21, 2023.

41.    These concerns, however, could not be considered by The Commonwealth of Puerto Rico and its agencies OGPE and DDEC or constitute the basis of their decision regarding the permit application, given the clear mandate of the Telecommunications Act to the effect that:

> No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the Federal basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC's] regulations concerning such emissions. 47 U.S.C. 332 (c) (7)(B)(iv).

42.    In failing to act and in effect denying the permit application, The Commonwealth of Puerto Rico and its agencies OGPE and DDEC violated the Telecommunications Act of 1996, 47 USC 151 et seq. (the "Federal Communications Act"). DDEC and OGPE actions and failure to act entitle Sky Tower to, *inter alia*, injunctive and declaratory relief ordering the grant of the permit application and issue all necessary permits to allow the installation and operation of the Facility.

43.    Also, Moca's acts, and opposition violates 47 U.S.C. 332 (c) (7)(B)(iv) of the Act.

## COUNT 2
### (Effective Prohibition of Services)

44.    Sky Tower repeats, restates, and reiterates each and every allegation contained in Paragraphs 1 to 43, inclusive as fully set forth herein.

45.    By not acting on the permit application without substantial evidence in the written record supporting the non-action, in effect it has turned for all intents and purposes as a DENIAL. This denial of the permit application by the Commonwealth of Puerto Rico and its agencies OGPE and DDEC violates Section 332 (c) (7) (B) (i) (II) of the Federal

Communications Act, which states that local governments "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

46.     Without the ability to place its antennas at the location proposed in its permit application, a significant gap in service would remain in the area.

47.     No feasible alternative(s) exist(s) for filling the remaining gaps in coverage.

48.     As an infrastructure provider for common communications services providers and carriers, Sky Tower is required to provide its services upon reasonable request in a non-discriminatory manner. The Resolution precludes Sky Tower from providing reliable service to an expanding wireless customer base, thereby prohibiting Sky Tower from meeting customer demand in violation of the Federal Telecommunications Act.

## COUNT III
### (Unreasonable Discrimination)

49.     Sky Tower repeats, restates, and reiterates each and every allegation contained in Paragraphs 1 to 48, inclusive as fully set forth herein.

50.     The denial of the permit application by the Commonwealth of Puerto Rico and its agencies OGP and DDEC violates Section 332 (c) (7) (B) (i) (I) of the Federal Telecommunications Act, which states that local governments "shall not unreasonably discriminate functionally equivalent services among providers of functionally equivalent services.

51.     Upon information and belief, Wireless telecommunication antennas operated and maintained by other licensed carriers are already located near the town square of Moca, OGPE and DDEC decision unreasonably discriminates against Sky Tower, giving other infrastructure providers and carriers a competitive edge in the area.

**COUNT IV**
**(State Claims)**

52.     Sky Tower repeats, restates and reiterates each and every allegation contained in Paragraphs 1 to 51, inclusive, as if fully set forth herein.

53.     Pursuant to the supplemental jurisdiction of this Court, Sky Tower invokes section 2151 of the Puerto Rico Uniform Administrative Procedure Act ("LPAU" for its acronym in Spanish), which grants all parties in administrative cases "the right to have the decision based on the record of the case." 3 L.P.R.A. sec. 2151.   Also, section 9653(g) of such Act mandates that "Every matter brought in an adjudicative proceeding before an agency shall be resolved within six (6) months from the filing date thereof, except in exceptional circumstances". 3 L.P.R.A. § 9653. **Is has been more than three years**.   This is not a reasonable time period under the Federal Act.

54.     By not acting on the permit application on a timely matter and without substantial evidence in the written record supporting their failure to act, in effect it has turned for all intents and purposes as a DENIAL, OGPE's and DDEC's denial of the permit application, which is arbitrary and capricious, illegal, an abuse of discretion and not supported by substantial evidence on the entire record.

55.     The Commonwealth of Puerto Rico and its agencies OGPE and DDEC failed to refute or otherwise contradict the substantial evidence introduced with both applications including all documents and evidence submitted for the record by Sky Tower and improperly relied on the generalized concerns and unsubstantiated, speculative intervenor letter in opposition to Sky Tower's permit application.

56.     The Resolution is illegal and an abuse of discretion. The Commonwealth of Puerto Rico and its agencies OGPE and DDEC based its decision on reasons outside the limits of its jurisdiction.

57.     The Commonwealth of Puerto Rico and its agencies OGPE and DDEC failure to act in a timely manner, triggers an exception to the doctrine of the exhaustion of administrative remedies.   First, the Federal Telecommunications Act does not require the exhaustion of administrative remedies.   Also, the continuation of the administrative process is futile and inadequate due to its delay.   Furthermore, defendant's actions or inactions are causing irreparable harm and the balance of interest shifts in favor of the exception to exhaust administrative remedies. See Flores v. Colberg 173 DPR 843 (2008) and  Junta Examinadora v. Elias, 144 DPR 483 (1997).

58.     On its interventor roll, the Municipality of Moca opposed the approval of the permit without substantial evidence in the written record supporting their action.  This action is contrary to the Federal Telecommunications Act which states that No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the Federal basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC's] regulations concerning such emissions. 47 U.S.C. 332 (c) (7)(B)(iv). In doing so, the Municipality of Moca is also responsible for all damages alleged in this complaint.

### COUNT IV

### (State Claims)

59.     Sky Tower repeats, restates and reiterates each and every allegation contained in Paragraphs 1 to 58, inclusive, as if fully set forth herein.

60.     The inaction by the Commonwealth of Puerto Rico and its agencies OGPE and DDEC and the illegal opposition of the Municipality of Moca (all in solidarity) has caused directly to Sky Tower damages roughly estimated to be as described in the following chart:

| | |
|---|---|
| Loss of revenue al dia 21 Marzo, 2024 | $ 36,800.00[7] |
| Credit Agreement Tmo | $ 23,000.00 |
| Rent invesment to Land Lord | $ 16,000.00 |
| Professional Services and Engineer expenses at OGPE | $ 5,126.65 |
| | $ 80,926.65 |

## V. PREEMPTION

61. Pursuant to the Supremacy Clause, U.S. CONST., Art. VI, cl. 2, federal law can preempt and displace state law through: (1) express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3) conflict preemption. *See Pac. Gas & Elec. Co. v. Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 75 L. Ed. 2d 752, 103 S. Ct. 1713 (1983); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987). Express preemption exists where Congress enacts an explicit statutory command that state law be displaced. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992). Absent explicit preemptive text, we may still infer preemption based on field or conflict preemption, both of which require us to imply Congress' intent from the statute's structure and purpose. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 154 L. Ed. 2d 466, 123 S. Ct. 518, 527 (2002); *FMC Corp. v. Holliday*, 498 U.S. 52,

---

[7] All damages increase on la monthly bases at a rate of $3,300.00 per month.

56-57, 112 L. Ed. 2d 356, 111 S. Ct. 403 (1990).

62.    Field preemption exists "'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'" *Petitioning Creditors v. Matsco, Inc. (In re Cybernetic Servs., Inc.)*, 252 F.3d 1039, 1045-46 (9th Cir. 2001) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947)).  Even when Congress has not occupied the field, we may still infer preemption if there is an "actual conflict" between federal and state law. Conflict preemption is found where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 10 L. Ed. 2d 248, 83 S. Ct. 1210 (1963), or where state law "**stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress**," *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 61 S. Ct. 399 (1941); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 899, 146 L. Ed. 2d 914, 120 S. Ct. 1913 (2000) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 115 S. Ct. 1483 (1995)).

63. When considering preemption, no matter which type, "**[t]he purpose of Congress is the ultimate touchstone**." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995). Where the statute does not speak directly to the issue, we look to "the goals and policies of the Act in determining whether it in fact pre-empts an action." *Ouellette*, 479 U.S. at 493. As explained in *Gade*, "[o]ur ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." 505 U.S. at 98; *Cal. v. Fed. Energy Regulatory Comm'n*, 495 U.S. 490, 504, 109 L. Ed. 2d 474, 110 S. Ct. 2024

(1990). Ordinarily, we also apply a presumption against preemption. However, "when the State regulates in an area where there has been a history of significant federal presence," *United States v. Locke*, 529 U.S. 89, 108, 146 L. Ed. 2d 69, 120 S. Ct. 1135 (2000), the presumption usually does not apply, *id.*; *Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) **Thus, we do not apply the presumption against preemption in this case because of the long history of federal presence in regulating long-distance telecommunications**. Ting v. AT&T, 319 F.3d 1126, 1135-41 (9th Cir. 2003).

62.  Thus, controversies regarding long distance communications, are preempted**.**

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court declare that the Commonwealth of Puerto Rico and its agencies OGPE and DDEC, in its inaction has denied Sky Tower's Application and the illegal opposition of MC violated the Federal Telecommunications Act in that the Denial which: (1) was not based on substantial evidence; (2) has the effect of prohibiting service; (3) unreasonably discriminates among providers of functionally equivalent telecommunication services; and (4) violates the LPAU. Sky Tower further prays that this Court issue an injunction compelling the Commonwealth of Puerto Rico and its agencies OGP and DDEC to: (1) grant the permit application and all permits required for the construction an installation of the infrastructure or in its alternative extend the period for compliance with any other requirements to issue a Resolution of Approval; (2) retain jurisdiction until such time as all required permits have been issued; (3) Grant the damages claimed herein including Attorney's fees and costs, and (4) grant such other and further relief as this Court may deem just and proper.

Dated: January 7, 2025

*S/ Juan R. Dávila Díaz*

**JUAN R. DÁVILA DÍAZ (224209)**

Capital Center Building I – PHI

Ste 1201

239 Arterial Hostos

Hato Rey PR 00918

TEL. (787) 525-7417 / FAX: 787-756-5250

davilajuanr@yahoo.com